**AFFIRMED as MODIFIED and Opinion Filed March 22, 2021**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00868-CR

**JUAN GABRIEL SOSA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F-1612055-L**

## MEMORANDUM OPINION
Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

A jury found appellant guilty of continuous sexual abuse of a child and the court assessed punishment at life in prison. Appellant argues the trial court erred by: (i) sua sponte dismissing veniremen; (ii) identifying the outcry witness; (iii) allowing the State to play the entire forensic interview recording; (iv) allowing the State to project an image of a shark during voir dire; and (v) sustaining the State's objection to a defense exhibit consisting of text messages from the complaining witness. Appellant also argues that counsel was ineffective because he filed a form motion for new trial and the sentence is illegal because it exceeds the statutory maximum. In a cross-point, the State requests that we reform the judgment to reflect that

appellant was sentenced to life in prison. As discussed below, we modify the judgment, and as modified, affirm.

## I.  BACKGROUND

Appellant lived with RC, her mother, and sister until RC was thirteen years old. One day, as RC and her mother were leaving RC's aunt's house, RC told her mother she did not want to go home and began to cry. RC wrote a note on her phone saying appellant had been sexually abusing her. She showed the note to her mother and then deleted it.

Mother took RC to the police station. The two were separated and RC gave the police a statement.

RC was subsequently interviewed at the Dallas Children's Advocacy Center. There, she disclosed that appellant sexually abused her from the time she was five years old until the age of thirteen.

Appellant was charged with continuous sexual abuse of a child and the case was tried to a jury. Appellant absconded before trial concluded and the jury found him guilty of the charged offense. The trial court assessed punishment at life in prison and entered judgment. Appellant appeals from that judgment.

## II.  ANALYSIS

**Dismissing Veniremen and Voir Dire**

During voir dire, the State displayed an image that initially appeared as puzzle pieces that a potential juror was ultimately able to identify as an image of a shark. The image was used in conjunction with the State's discussion of reasonable doubt.

When voir dire concluded, the trial court unilaterally struck forty-two potential jurors. After reviewing the parties' peremptory strikes, the judge asked if there were any objections. Both parties responded that there were none.

Appellant now argues that the trial court erred by striking the forty-two potential jurors without specific motions for cause and by allowing the State's display of the shark image. Appellant's trial counsel, however, did not object to these issues in the court below. *See* TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Consequently, the issues have not been preserved for our review. *See Chapa v. State*, 05-19-00609-CR, 2020 WL 1129980, at *3 (Tex. App.—Dallas Mar. 9, 2020, no pet.) (mem. op., not designated for publication) (citing *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017)). We resolve appellant's first two issues against him.

**The Outcry Witness**

The trial court ruled that Kimberly Skidmore from the Children's Advocacy Center was the proper outcry witness. Appellant argues this was erroneous because the abuse was first disclosed to RC's mother.[1] We disagree.

The Texas Code of Criminal Procedure creates a hearsay exception for a child's first outcry of sexual abuse to an adult in a proceeding in the prosecution of an offense if committed against a child younger than fourteen. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072; *Bays v. State*, 396 S.W.3d 580, 585 n.1 (Tex. Crim. App. 2013). The exception allows the adult to testify about the child's statements to them when the statements (1) were made by the child subjected to the offense(s), (2) describe the offense(s), and (3) were given to the first adult that was not the defendant. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). To be a proper outcry statement, the child's statement to the witness must describe the offense in some distinct manner and be more than a general allusion to sexual abuse. *Garcia v. State*, 792 S.W.2d 88, 91–92 (Tex. Crim. App. 1990).

A trial court's outcry-witness designation is reviewed for an abuse of discretion. *Id.*; *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd). The

---

[1] Appellant also posits that the proper outcry witness might "possibly [be] the police." But appellant's position in the court below was that Mother was the only proper outcry witness.

–4–

trial court has broad discretion when deciding which witnesses qualify as outcry witnesses. *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd).

Appellant insists that Mother was the proper outcry witness because she "was aware of the digital and penile penetration as well as the allegations of oral sex before the forensic interview." The record, however, reflects otherwise.

Appellant was not charged with any acts of digital penetration, nor did Mother testify about such acts. In fact, Mother testified that RC did not provide any details about the abuse until they arrived at the police station. Once there, RC provided some details to the police, but Mother was not present when she did so. RC only told Mother that appellant forced her to have sex with him.

Although Mother learned additional details, the record does not clearly reflect what those details were or whether RC relayed the frequency of those acts to Mother. Moreover, Mother did not testify about the allegation that appellant placed his tongue on RC's sexual organ.

Skidmore confirmed that RC did not provide Mother with details concerning the abuse. Instead, RC simply told Mother that she had been sexually abused.

In contrast, Skidmore testified about RC's description of the abuse, including appellant touching RC's vagina with his tongue, putting his penis in her vagina, and RC's mouth on appellant's penis. From this evidence, the trial court could reasonably have concluded that Skidmore was the proper outcry witness because, unlike the description she gave her Mother, the description RC provided to Skidmore

was more than just a general allusion to sexual abuse. *See Garcia*, 792 S.W.2d at 91–92. Appellant's third issue is overruled.

## Admission of Evidence

Appellant's sixth and seventh issues argue that the trial court erred by excluding a defense exhibit showing RC's text messages on relevance grounds and by allowing the State to play the video of RC's forensic interview.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when its ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* at 83 (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))

### A.    Forensic Interview

During RC's cross-examination, referring to the forensic interview, defense counsel elicited testimony suggesting RC changed her statement about when the abuse started.  Specifically, counsel asked her about initially stating that the abuse started when she was five, then later saying that it started when she was ten and then, in the same interview, saying that started when she was eight. The State argued that counsel opened the door to the forensic interview by stating different facts than what

the interview showed, making it look as though RC was telling two different stories. The trial court allowed the forensic interview to be played for the jury.

Appellant argues the admission of the forensic interview video was erroneous because the video contained inadmissible hearsay. According to appellant, the State only wanted to use the video to defeat defense counsel's "unusually effective cross-examination."

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Generally, hearsay is not admissible unless a statute or rule provides otherwise. TEX. R. EVID 802. It is well-established that forensic interviews contain hearsay. *See Gray v. State*, No. 05-17-01427, 2018 WL 6599021, at *5 (Tex. App.—Dallas Dec. 17, 2008, pet. ref'd) (mem. op., not designated for publication).

When defense counsel pursues a subject or line of questioning that would ordinarily be outside of the realm of proper comment for the State, the defense "opens the door" and creates a right of reply for the State. *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door." *Hayden v. State*, 296 S.W. 3d 549, 554 (Tex. Crim. App. 2009). "A party who opens a door to an issue 'cannot complain when the opposing party desires to go into the details of that subject.'" *Id.* (quoting *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.)). In a case involving whether a video

recording of a child-complainant's forensic interview is admissible under the rule of optional completeness, the State is entitled to the admission of such a video recording when (1) defense counsel asks questions concerning some of the complainant's statements on the recording, (2) defense counsel's questions leave the possibility of the jury's receiving a false impression from hearing only part of the conversation, with statements taken out of context, and (3) the recording is necessary for the conversation to be fully understood. *Id.* at 190–91. But even when defense counsel's questions relate to the complainant's statements on the recording, the rule of optional completeness does not permit the State to introduce the recording when (1) the recording is unnecessary to show the context of the statement, such as showing the absence of a statement by the complainant rather than the existence of a directly contradictory statement, and (2) admission of the recording would likely create confusion, such as when the recording references extraneous offenses. *Id.* at 191 (citing *Sauceda v. State*, 129 S.W.3d 116, 121–24 (Tex. Crim. App. 2004)).

Assuming, without deciding, that the trial court erred in admitting the entire recording of RC's forensic interview under the rule of optional completeness, we must determine whether the error requires reversal of the trial court's judgment of conviction. *See* TEX. R. APP. P. 44.2. Because the erroneous admission of hearsay evidence is not constitutional error, we apply the standard set out in Rule 44.2(b) and disregard the error if it did not affect the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st

–8–

Dist.] 2010, pet. ref'd) (erroneous admission of a hearsay statement constitutes non-constitutional error subject to a harm analysis). A defendant's substantial rights are affected when the error had a substantial and injurious effect in determining the verdict. *Campos*, 317 S.W.3d at 779 (citing *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001)). We should not overturn a conviction for such an error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. *Id.*; *see also Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

The erroneous admission of evidence becomes harmless error if other evidence proving the same fact is properly admitted elsewhere, or the evidence comes in elsewhere without objection. *Land v. State*, 291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd); *see Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("[A]ny error in admitting the [hearsay] evidence was harmless in light of other properly admitted evidence proving the same fact."); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence."). "In situations where a video recording is improperly admitted, yet the recording is cumulative of the victim's properly admitted live testimony on the same issue, courts often disregard the error, reasoning that it could not have affected the appellant's substantial rights." *Land*, 291 S.W.3d at 29; *Mick v. State*, 256 S.W.3d 828, 832 (Tex. App.—Texarkana

2008, no pet.) (holding that because video recording of interview of child complainant was cumulative of child's properly admitted trial testimony and discussed same subject, any error in admission of video recording did not affect defendant's substantial rights and was harmless); *Matz*, 21 S.W.3d at 912–13 (same).

Other than cross-examination, RC's trial testimony did not focus on whether she was five, eight, or ten when the abuse began. Instead, the State asked her about the details of abuse she recalled when living in various locations. Thus, the cross-examination regarding the age at which the abuse began created a false impression that RC gave an inconsistent version of events. But the State did not limit the portion of the recording played to those apparent inconsistencies; instead, the State played the entire recording.

That recording, however, was mostly cumulative of properly admitted trial testimony. It also provided context for the impressions of inconsistency developed during cross-examination. During the interview with Skidmore, RC described how appellant was "too cuddly" with her and touched her a lot between the ages of five and seven. When she was seven, he began touching her more, and put his hand in her pants. Appellant "raped her" when she was ten years old by putting his penis in her vagina. RC provided Skidmore with descriptions of specific instances of sexual abuse that occurred when she was living in Grand Prairie, Carrollton, and Fort Worth.

Skidmore testified that RC told her she had been sexually abused from the time she was five and she was first "raped" when she was ten and living in Grand Prairie. RC lived in Fort Worth when she was eight or nine and described appellant forcing her to perform oral sex. Skidmore explained that she did not get into detail about RC being abused at age five because when RC said she was first "raped" at age ten, her line of questioning moved to that. Skidmore also said that rape and sexual abuse can be defined differently.

In arguing that the trial court committed reversible error when it admitted the video recording, appellant acknowledges that "some of the information" in the video "had been previously presented," but insists this is of no consequence because the purpose of the video was to establish RC's credibility. But appellant provides no authority, nor are we aware of any, suggesting this vitiates the fact that the complained-of evidence was otherwise admitted.

When we consider the entire record, as we must when conducting a harm analysis under Rule 44.2(b), we conclude that a fair assurance exists that any error in admitting the video recording of RC's forensic interview did not influence the jury or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Campo*s, 317 S.W.3d at 779; *Mick*, 256 S.W.3d at 832; *Matz*, 21 S.W.3d at 912–13. Accordingly, any error in admitting the forensic interview does not constitute reversible error. We resolve appellant's sixth issue against him.

## B. Text Messages

Appellant argues the trial court erred by excluding text messages from RC on the State's relevance objection. Appellant maintains the evidence was relevant to show RC's state of mind and that she was not traumatized, in furtherance of the defensive theory that RC was untruthful. Although appellant admits that the court admitted another exhibit (a picture of RC and appellant) "which superficially appears to serve the same purpose" as the excluded exhibit, appellant insists that the excluded exhibit was "more emotionally evocative and persuasive."

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . ." TEX. R. EVID. 401. "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). Relevant evidence is generally admissible. *See* TEX. R. EVID. 402.

The record does not reflect an abuse of discretion here. Although defense counsel sought to introduce text messages, counsel did not proffer this evidence or offer it for record purposes. We thus have no basis to assess the trial court's relevance determination. Likewise, the arguments the parties made to the trial court concerning admission of the evidence do not inform our analysis concerning the

nature and context of the evidence.[2] We resolve appellant's seventh issue against him.

**Ineffective Assistance of Counsel**

Appellant argues that his counsel was ineffective during the motion for new trial phase because he filed a standard form arguing the verdict was contrary to the evidence. According to appellant, harm is presumed under *Cronic v. U.S.*, 466 U.S. 648, 859 (1984) because counsel failed to provide any meaningful assistance.

Our court has addressed the argument appellant seeks to advance. In *Skinner v. State*, No. 05-17-00153-CR, 2018 WL 3545023 (Tex. App.—Dallas July 24, 2018, pet. ref'd) (mem. op., not designated for publication) we concluded that *Cronic* does not apply to counsel filing a "form" motion for new trial. *Id*. at *10. Rather, counsel's failure to test the prosecution's case "must be complete." *Id.*; *see also, Suarez v. State*, No. 05-19-01035-CR, 2020 WL 6580396, at *4 (Tex. App.—Dallas Nov. 10, 2020, no pet.) (mem. op., not designated for publication). Consequently, we apply the test for ineffective assistance of counsel set out in *Strickland. Id.*

Under *Strickland*, the defendant must prove that (i) his or her trial counsel's representation was deficient and (ii) the deficient performance was so serious that it

---

[2] The text messages appear to be between RC and friends regarding "penises," and were exchanged after RC made her outcry.

deprived him or her of a fair trial. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id*. at 688. A deficient performance, however, deprives the defendant of a fair trial only if it prejudices the defense. *Id*. at 691–92. To show prejudice, appellant must demonstrate there was a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Id*. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id*. at 697.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's strategy, we will not conclude that the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). It is not sufficient that the defendant show, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence. *Id.* Rather, to establish counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must demonstrate counsel's errors were so

serious that he or she was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Thus, in many cases, the defendant cannot meet the first *Strickland* prong because the direct appeal record is underdeveloped and does not adequately reflect trial counsel's alleged failings. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

In this instance, appellant has presented no argument to show what grounds his counsel should have raised in the motion for new trial or that the result of the proceeding would have different if he had done so. Because appellant has failed to meet his burden under *Strickland,* this issue is overruled.

**Illegal Sentence**

Appellant argues that the sentence is illegal because it includes the statement "Life without Parole." The continuous sexual assault of a child statute provides: "An offense under this section is a felony of the first degree, punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years." *See* Tex. Penal Code Ann. § 21.02(h).

As discussed below, the written judgment is erroneous and should be modified. Nonetheless, the record reflects that appellant's sentence was life

imprisonment. This is within the statutory range. *See id.* Appellant's issue is resolved against him.

**State's Cross-Point**

The State argues that the written judgment incorrectly states: "Life without Parole" and should be reformed. We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

The record reflects that the sentence pronounced was life imprisonment. We therefore sustain the State's cross-point and modify the judgment accordingly.

### III. CONCLUSION

Having resolved all of appellant's issues against him, we modify the judgment to reflect that the sentence imposed was life imprisonment, and as modified, affirm.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190868F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

JUAN GABRIEL SOSA, Appellant

No. 05-19-00868-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F16-12055-L.
Opinion delivered by Justice Garcia.
Justices Schenck and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that the sentence assessed was life in prison.
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered March 22, 2021